Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 425 | **DATE** | 12/16/02 |
| **CASE TITLE** | Hakim vs. Outsourcing Solutions, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, defendant's motion for summary judgment (4-1) is granted. Judgment is entered in favor of defendants. Plaintiff's motion to strike is denied as moot.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 23 2002 | |
| | Notified counsel by telephone. | | date docketed | 18 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MICHAEL HAKIM, )
        Plaintiff, )
)
vs. ) Case No. 02 C 0425
)
OUTSOURCING SOLUTIONS, INC. )
and OSI COLLECTIONS SERVICES, INC., )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Michael Hakim brought this suit against his former employer and its parent company pursuant to 42 U.S.C. § 1985(2) and Illinois common law. Hakim alleges that defendants, through one of their managers, conspired with a former employee to elicit false testimony from a witness in a previous lawsuit brought by Hakim and three of his co-workers. Defendants have moved for summary judgment. Plaintiff has moved to strike portions of defendants' reply to his Local Rule 56 statement of additional facts. For the reasons stated below, the Court grants defendants' motion for summary judgment. Because in reaching our decision we do not rely on the disputed portions of defendants' submissions, plaintiff's motion to strike is denied as moot.

## BACKGROUND

Until his resignation on March 1, 1999, Hakim was a debt collector at the Schaumburg, Illinois facility of Outsourcing Collection Services, Inc. (formerly Payco-General American Credits, Inc.), a subsidiary of Outsourcing Solutions, Inc. (OSI).[1] The present case is one of

---

[1] For purposes of simplicity, we refer to both defendants collectively as OSI.

several spawned by a Title VII lawsuit filed against OSI in 1999 by Hakim, Annamarie Quela, Shelby Mignault, and Tabatha Irvin ("the Quela litigation").[2] All plaintiffs in the Quela litigation were represented by Hakim's present attorney.

Hakim's claims in the Quela litigation included retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (2000), and assault and battery.[3] Hakim alleged that his OSI supervisor, George Chaharbakhshi, subjected him to verbal and physical harassment based on Hakim's perceived sexual orientation. Quela Litigation Am. Compl. ¶ 20. Hakim claimed that when he complained about the harassment, Chaharbakhshi retaliated by intimidating and verbally abusing him and depriving him of commissions and the opportunity to work on profitable accounts. The other Quela litigation plaintiffs also accused Chaharbakhshi, and certain other coworkers, of sexual harassment and claimed retaliation.

Judy Krueger, the highest level manager of the Schaumburg facility, was placed in charge of OSI's internal investigation of the allegations, despite her apparent conflict of interest as the head of the facility where the alleged misconduct had occurred. As part of the investigation and to prepare OSI's eventual litigation defense, Krueger obtained written statements from several employees. Between November 13, 1998 (when the harassment allegations began to surface) and June 17, 1999, Katrina Malone provided six written statements that cast a shadow on the Quela plaintiffs' allegations. Specifically as regards Hakim, in her statement dated March 18, 1999,

---

[2] Quela and Mignault originally filed a sexual harassment suit on March 23, 1999, after having received a right to sue from the EEOC. Hakim and Irvin joined the suit in June, 1999, and an amended complaint was filed on July 8, 1999.

[3] Hakim also alleged discrimination in violation of the Cook County Human Rights Ordinance, a claim the court subsequently dismissed.

2

Malone claimed that Hakim had admitted to her that he lied about Chaharbakhshi. She maintained that Hakim had stated, "I really do like George a lot, and I hate that I have lied on him .... I told someone that George tried touching on me, when he was only playing with me. George never tried feeling on me." App. of Materials in Supp. of Defs.' Mot. for Summ. J., Ex. 5. Malone claimed Hakim had revealed that he lied about Chaharbakhshi at the behest of Quela and Mignault.

In December 1999, Hakim attempted to settle with OSI and made a demand of $95,000. OSI, believing Hakim's claims to have little merit, refused. On January 18, 2000, Malone gave a deposition in the Quela litigation; her testimony corroborated her written statements. On March 9, 2000, however, Malone contacted Hakim's attorney and informed him that she had given false testimony at her deposition. On March 12, Malone, assisted by Hakim's attorney, prepared and signed an affidavit. In it she alleged that Krueger and Chaharbakhshi had coerced her into giving false information in her written statements and deposition. She said Krueger and Chaharbakhshi threatened to fire her if she did not comply with their requests and that they told her exactly what to say in her statements, sometimes word-for-word. Malone also admitted in the affidavit that she had observed Chaharbakhshi verbally abuse Hakim and slap him on the back.

The affidavit she also stated that as Malone's deposition approached, Krueger frequently called Malone into her office to discuss her upcoming testimony. Krueger instructed Malone to conform her testimony to her previous written statements and promised her a promotion if she did. On the eve of her deposition, Malone claimed, she received a telephone call from Chaharbakhshi, who had left OSI to start his own collection business on August 31, 1999. Chaharbakhshi gave her instructions similar to Krueger's and, specifically, told her to say that

3

Hakim was a "liar." Pl.'s Resp. to Defs' Statement of Material Facts ¶ 26.

On March 26, 2000, Hakim's attorney sent the court Malone's affidavit. In a cover letter, Hakim's attorney did not request any specific remedy for the alleged misconduct and stated simply that he was "bringing this information to the attention of the Court." *Quela v. Payco-Gen. Am. Credits, Inc.*, No. 99 C 1904, 2000 WL 656681, app. at *9 (N.D. Ill. Mar. 26, 2000). Despite knowing of Malone's affidavit and bringing it himself to the court's attention, in a settlement discussion on March 31, 2000, Hakim reduced his demand to $12,500. OSI again rejected Hakim's offer and stated that it was not willing to pay Hakim anything.

On April 26, 2000, Judge Castillo held an evidentiary hearing to determine the veracity of Malone's affidavit. Hakim and his attorney were present at the hearing. After the hearing, settlement negotiations between Hakim and OSI continued. On May 4, 2000, Hakim contacted OSI; OSI suggested a settlement whereby Hakim would voluntarily dismiss his claims in exchange for OSI's agreement not to seek reimbursement of its litigation costs from Hakim.[4] On May 18, the parties agreed to the terms of the settlement.

On May 17, the day before this agreement and unbeknownst to the parties, Judge Castillo concluded that both Chaharbakhshi and Krueger "knowingly and wilfully pressured Ms. Malone to give false testimony in this case. Both individuals created some of the content in Ms. Malone's false written statements and deposition testimony. In addition, they both gave her cause to be fearful of losing her job if she didn't cooperate." *Quela*, 2000 WL 656681, at *4. Judge Castillo also concluded that Malone's statements were "material to the company's

---

[4] Hakim also agreed not to pursue a discrimination claim with the Cook County Commission on Human Rights.

4

defense," because "[h]er statements . . . helped to discredit the plaintiffs' case because she testified in great detail about incidents which took place at work." *Id.* As a discovery sanction, Judge Castillo entered a default judgment on all issues of liability in favor of the plaintiffs, including Hakim. *Id.* at *8.

On May 19, having learned of the default judgment, Hakim attempted to withdraw his offer to settle. OSI replied that their agreement was binding and moved to vacate the default judgment as to Hakim's claims and to enforce the settlement. On June 20, Judge Castillo granted the motion. Hakim appealed, and the Seventh Circuit affirmed. *Hakim v. Payco-Gen.Am. Credits, Inc.*, 272 F.3d 932, 936 (7th Cir. 2001).

To add another wrinkle to this case, on September 11, 2001, the EEOC filed a lawsuit against OSI on behalf of Malone and other OSI employees, alleging Title VII violations ("the Malone litigation"). Malone intervened and brought two claims of civil conspiracy, one pursuant to 42 U.S.C. § 1985(2) and the other pursuant to Illinois law, alleging that Krueger and Chaharbakhshi conspired to deter her from testifying truthfully in the Quela litigation. Granting OSI's motion for summary judgment on her conspiracy claims, Chief Judge Kocoras concluded that Malone did not have standing to sue under § 1985(2) because she was not a party in the Quela litigation. *EEOC v. Outsourcing Solutions, Inc.*, No. 01 C 7037, 2002 WL 31409584, at *17 (N.D. Ill. Oct. 24, 2002). Chief Judge Kocoras also found that Malone did not have sufficient evidence to establish an essential element of her state-law conspiracy claim – the existence of an agreement between Krueger and Chaharbakhshi to procure Malone's false testimony. *Id.* at *20.

On January 17, 2002, Hakim filed the instant lawsuit, seeking damages for injuries he

claims he sustained as a result of OSI's alleged participation in the conspiracy to elicit Malone's false testimony.

## ANALYSIS

Summary judgment is proper only if the affidavits and other evidentiary materials submitted by the parties show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The Supreme Court has stated that Rule 56(c) mandates the entry of summary judgment when, "after adequate time for discovery," the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

This Court must therefore determine whether Hakim can establish the essential elements of his § 1985(2) and civil conspiracy claims. If he cannot, he has raised no genuine issue of material fact for trial, and OSI is entitled to summary judgment.

**A.  42 U.S.C. § 1985(2)**

Section 1985(2) proscribes in relevant part conspiracies to:

> deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully.

6

42 U.S.C. § 1985(2). Section 1985(3) contains the remedial provision and creates a cause of action for persons harmed by such a conspiracy:

> [I]f one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, where by another is injured in his person or property . . . , the party so injured . . . may have an action for the recovery of damages, occasioned by such injury . . . , against any one or more of the conspirators. . . .

*Id.* § 1985(3); *see Haddle v. Garrison*, 525 U.S. 121, 125 & n.2 (1998).

The elements of a claim under Section 1985(2) are: 1) a conspiracy; 2) to deter a witness by force, intimidation or threat from attending or testifying before a United States court; 3) that results in injury to the plaintiff.. *See, e.g., Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 23 (2d Cir. 1984); *cf. Haddle*, 525 U.S. at 124-25 (spelling out the elements of a conspiracy under 42 U.S.C. § 1985(3)); *Roach v. City of Evansville*, 111 F.3d 544, 547 (7th Cir. 1997) (same). A conspiracy, in turn, requires an agreement between the wrongdoers to act in concert. *See Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002) ("To establish the existence of a conspiracy [under § 1985(3)], a plaintiff must show that the conspirators agreed to inflict injury upon him; in other words, that they acted with a single plan, the general nature and scope of which was known to each conspirator."); *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999) (stating that to establish a conspiracy under 42 U.S.C. § 1985(3) "a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him").

Defendants maintain that they are entitled to summary judgment because Hakim has no evidence that Krueger and Chaharbakhshi agreed with each other to pressure Malone into giving false testimony in the Quela litigation. They also claim that Hakim is not entitled to relief because

7

he has not suffered an injury that is cognizable under § 1985(2).

## I. Proof of an Agreement

OSI states that Hakim must "do more than merely allege that Krueger and Chaharbakhshi conspired, he must come forth with specific evidence to establish the existence of an agreement between them." Defs.' Mem. of Law at 8 (emphasis omitted). We agree, but find that Hakim has met this burden.

OSI relies on the absence of direct evidence of any communication between Chaharbakhshi and Krueger after he left OSI. OSI cites *Green v. Benden*, 281 F.3d 661 (7th Cir. 2002), where the Seventh Circuit affirmed a grant of summary judgment because there was no evidence of any contact between the alleged conspirators. *Green*, however, is inapposite. In *Green*, not only was there no evidence of any contact between the alleged conspirators, there was also no evidence that they "had any relationship" whatsoever. *Id.* at 666. Such is far from the case with Krueger and Chaharbakhshi.[5]

OSI directs our attention to Chief Judge Kocoras's opinion in the Malone litigation. He found the same evidence that is before us insufficient to establish an agreement. *EEOC v. Outsourcing Solutions, Inc.*, 2002 WL 31409584, at *13-14. This Court finds itself in respectful disagreement with Chief Judge Kocoras. Hakim admits that he has no direct evidence of an

---

[5] OSI also relies on the deposition testimony in the Malone litigation of Ausema Kiegelis, Krueger's longterm roommate and also an OSI employee and friend of Chaharbakhshi's. Kiegelis testified that Krueger had no contact with Chaharbakhshi after August 1999 until Krueger's death (Krueger passed away in September, 2000). We find this testimony does not support summary judgment for two reasons. First, the fact that Kiegelis did not have personal knowledge of any contact between Krueger and Chaharbakhshi does not mean that none occurred. Second, given her close relationship with Krueger, her friendship with Chaharbakhshi, and the fact that both of these friends participated in a fraud on the court, the credibility of her testimony is for a jury to determine.

8

agreement but contends that a jury could reasonably infer from circumstantial evidence that Krueger and Chaharbakhshi were in cahoots to secure Malone's false testimony. We agree. *Cf. Green*, 281 F.3d at 665-66 ("Agreement may be inferred from circumstantial evidence . . . if it is sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." (citing *Hernandez*, 197 F.3d at 263)).

Hakim points to the longstanding friendship between Krueger and Chaharbakhshi, submitting that Krueger was even the godparent of one of Chaharbakhshi's children. And, although Chaharbakhshi had not worked for OSI for over four and a half months when Malone gave her deposition, he somehow knew its exact date and called her the night before. This is information that, one could reasonably infer, came from Krueger. And both Krueger and Chaharbakhshi instructed Malone that her testimony was to match her prior statements. This parallel conduct together with the other circumstantial evidence is suggestive of action in concert.

But the most important fact that Hakim marshals in favor of a conspiracy to elicit false deposition testimony is Krueger and Chaharbakhshi's previous combined efforts to secure the earlier false statements from Malone. Krueger "participated with Chaharbakhshi in instructing Malone what to write and not to write in her statements." Defs.' Reply to Pl.'s Additional Facts ¶ 16. Malone testified in the Malone litigation that Chaharbakhshi and Krueger reviewed the drafts of Malone's written statements together and that Krueger "basically went along with whatever [Chaharbakhshi] had to say or what they [sic] wanted in the statements." *Id.* ¶ 17.

Moreover, conspiracies are "often purposefully shrouded in mystery." *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 66, 645 N.E.2d 888, 895 (Ill. 1995). Hakim therefore cannot be

9

faulted for his lack of concrete evidence of an agreement between Krueger and Chaharbakhshi. Conspiracy is "rarely susceptible of direct proof; instead, it is established from circumstantial evidence and inferences drawn from evidence, coupled with commonsense knowledge of the behavior of persons in similar circumstances." *Id.* at 66, 645 N.E.2d at 895. A jury reasonably could infer from their longstanding relationship; their previous combined efforts to pressure Malone into giving false statements; Chaharbakhshi's knowledge of the date of Malone's deposition; and their mutual interest in keeping their previous conduct from coming to light that Krueger and Chaharbakhshi acted in concert to pressure Malone to conform her testimony to the written statements they had previously pressured her into writing. Summary judgment based on lack of evidence of an agreement is therefore inappropriate.

## II. Proof of Injury

Defendants maintain that summary judgment is also warranted because Hakim cannot establish that he was injured as a result of the alleged conspiracy, as required by Section 1985(2). Hakim responds that he was injured because he incurred the cost of taking Malone's false deposition and because the conspiracy "affected his underlying case" by hampering his ability to present his claims. Pl.'s Resp. to the Defs.' Mot. for Summ. J. at 10.

The cost of Malone's deposition was split among the plaintiffs in the Quela case; Hakim's share was $90.63. This *de minimis* incurred expense is insufficient to establish the injury element under Section 1985(2). Among other things, Hakim has offered no evidence that he actually paid it, even though the deposition took place in January, 2000, nearly three years ago.

Alternatively, Hakim argues that the conspiracy caused him injury because "[i]n the absence of coercion, [he] would have [had] untainted, truthful testimony from Ms. Malone

10

supporting his claims." *Id.* at 13. He seems to suggest that, had his claims proceeded to trial, any truthful testimony by Malone would have been subjected to impeachment by her prior deposition. *Id.* This, he contends, hampered his ability to present his case in the Quela litigation and "factored into his decision to settle, a decision made under threats by defendants to seek substantial costs if they prevailed on their [Quela litigation] summary judgment motion." *Id.* at 13-14. Hakim claims to have abandoned his claims "because of the false testimony." *Id.* at 14.

Hakim's contentions might have had some merit had Hakim lost at trial or had Malone's false testimony come to light after he settled the case. But Hakim cannot claim that the false testimony injured him when he settled in full awareness of the wrongdoing after bringing it to light before Judge Castillo.

Hakim knew the strengths and weaknesses of his case, including the fact that OSI stood accused of suborning perjury, yet he chose to settle. In fact, it was Hakim who brought Malone's affidavit to the court's attention, and he and his attorney attended the evidentiary hearing on Malone's allegations before he settled. And it was Hakim who pursued settlement by calling OSI just days after the hearing. Hakim elected to settle rather than pursue his claims at trial, despite his and the court's knowledge of the defendants' wrongdoing. He therefore suffered no injury from the false testimony. The Seventh Circuit, in affirming Judge Castillo's enforcement of Hakim's settlement agreement, stated:

> Hakim did not show that he relied on OSI's false statements or bad faith conduct in entering into the settlement agreement. In fact . . . Hakim requested and witnessed the evidentiary hearing on the issue of OSI's coercion of Malone. He pursued the settlement notwithstanding his belief that OSI acted in bad faith, and with full knowledge that, if he did not settle, the court had the authority to enter a default judgment in his favor.

11

*Hakim*, 272 F.3d at 936. Hakim made what is in hindsight a bad decision; but he did not suffer an injury that is cognizable under Section 1985. Because he did not establish this essential element of his conspiracy claim, he has raised no genuine issue of material fact for trial and summary judgment in favor of defendants is appropriate. *Celotex*, 477 U.S. at 321.

## B.  Illinois Civil Conspiracy

The elements of civil conspiracy in Illinois are 1) an agreement; 2) to participate in an unlawful act or a lawful act by unlawful means; 3) an overt act performed in furtherance of the scheme; and 4) an injury caused by the overt act. *Sain v. Nagel*, 997 F. Supp. 1002, 1017 (N.D. Ill. 1998). Because, as stated above, Hakim cannot establish that the alleged conspiracy caused him injury, summary judgment in favor of defendants is also appropriate on Hakim's Illinois civil conspiracy claim.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment [docket item no. 4-1] is granted. The Clerk is directed to enter judgment in defendants' favor. Plaintiff's motion to strike [docket item no. 14-1] is denied as moot.

MATTHEW F. KENNELLY
United States District Judge

Date: December 16, 2002